IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| SEVILLE INDUSTRIES LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE No. _____ |
| | § | |
| THE UNITED STATES SMALL BUSINESS | § | |
| ADMINISTRATION, ISABELLA | § | |
| CASILLAS GUZMAN, In Her Official | § | |
| Capacity as Administrator of the Small | § | |
| Business Administration, JANET YELLEN, | § | |
| In Her Official Capacity as United States | § | |
| Secretary of the Treasury, and THE | § | |
| UNITED STATES OF AMERICA, | § | |
|     Defendants. | § | |

## COMPLAINT OF PLAINTIFF SEVILLE INDUSTRIES LLC

Plaintiff Seville Industries LLC ("Seville") respectfully asks this Court to grant declaratory and injunctive relief and hold unlawful and set aside the agency actions of Defendants the United States Small Business Administration ("SBA"); Isabella Casillas Guzman, in her official capacity as Administrator of the SBA; Janet Yellen, in her official capacity as United States Secretary of the Treasury; and the United States of America. In support, Seville alleges as follows:

## I.
## INTRODUCTION

1.    On March 27, 2020, to assist small businesses in the wake of the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which established the Paycheck Protection Program ("PPP"). *Coronavirus Aid, Relief, and Economic Security Act*, Pub. L. No. 116–136, 134 Stat. 281 (March 27, 2020), *codified at* 15 U.S.C. § 9001, *et seq.*

2.    The PPP provides loans through the SBA to certain small businesses who have encountered hardships due to the pandemic (referred to as "PPP Loans") and offers full forgiveness of those loans

if the proceeds are properly expended.  The PPP is implemented by the SBA with support from the Department of Treasury.

3.      The primary purposes of the CARES Act are to "keep[] American workers paid and employed," and to "assist small businesses nationwide adversely impacted by the COVID-19 emergency." 15 U.S.C. Ch. 16, Subchapter I; *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020). Seville is one of those small businesses that the CARES Act was created to support. Seville was established in 2013 and its headquarters has at all times been located in the backyard of this Court in Abbeville, Louisiana, with divisional offices in North Dakota and Texas.  Seville provides products, services, and work crews to businesses operating in the oil and gas sector. When the COVID-19 pandemic began on or around March 15, 2020, Seville employed 111 independent contractors and 58 W-2 employees.

4.      Like many other small businesses, Seville was hit hard financially by the COVID-19 pandemic and struggled to keep its workers paid and its doors open. On April 7, 2020, Seville applied for a PPP Loan based on Seville's substantial financial concerns and the belief that any funds received would be wholly forgiven.

5.      SBA awarded Seville a PPP Loan in the amount of $2,578,351.00 on April 9, 2020.  Seville would not have been able to operate its business during this time but for receiving the PPP Loan proceeds.  In August 2021, Seville applied for full forgiveness of the PPP Loan in accordance with SBA regulations.

6.      The SBA, however, denied full forgiveness of the PPP Loan, and now has rendered Seville "ineligible" for a portion of the PPP Loan. Seville was asked to pay back the proceeds the SBA disbursed, and Seville expended in accordance with the SBA's regulations.

7.      Specifically, the SBA determined that Seville was "ineligible" for $1,890,842.36 of the PPP Loan proceeds on the grounds that the maximum eligible loan amount was not properly calculated. The decision was upheld by the SBA's Office of Hearings and Appeals.

8.      In the PPP Loan application process, Seville relied on the advice of its lender, Loan Source, Inc. ("Loan Source" or "Lender"), and the PPP Loan application itself, both of which provided that payments to independent contractors could be considered in the maximum loan amount calculation. In addition, Seville did not use a single penny of PPP Loan proceeds to pay independent contractors.

9.      Seville followed each and every regulation in effect at the time of its loan application and relied on the guidance of its Lender and the SBA.  Notwithstanding, Seville is now required to pay back $1,890,842.36 of the PPP Loan proceeds *with interest*.

10.     The Defendants' acts are arbitrary, unlawful, and unjust and have caused a well-established small business in the Abbeville community significant harm.  Accordingly, Seville respectfully requests this Court issue a declaration that the agency actions were arbitrary, capricious, unlawful, and an abuse of discretion; vacatur of the underlying agency action; and full forgiveness of Seville's PPP Loan.

## II.
## PARTIES

11.     Plaintiff is a limited liability company duly organized in Louisiana and does so conduct business in Louisiana.  Seville's principal place of business is located at 16915 W Hwy 335, Abbeville, LA 70510; and each of Seville's members are domiciled in Louisiana.

12.     Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* The SBA maintains a district office at 500 Poydras St., Suite 828 New Orleans, Louisiana 70130.  The SBA administers the PPP pursuant to the CARES Act.

13.     Defendant Isabella Casillas Guzman is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity as Administrator. Guzman is a proper defendant in Administrative Procedure Act ("APA") challenges, as asserted herein, pursuant to 15 U.S.C. § 634(b) because Guzman is the officer with final authority for administering the PPP for the SBA.

14.     Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued in her official capacity. Yellen assists in the administration of the PPP, and funds supporting the PPP are appropriated out of amounts in the Treasury, *see* 15 U.S.C. § 9006(a).

15.     Defendant the United States of America is a proper defendant in APA challenges, as asserted herein, pursuant to 5 U.S.C. § 702.

## III.
## JURISDICTION AND VENUE

16.     This is a civil action over which this Court has subject matter jurisdiction by virtue of 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1346(a)(2) (civil action against the United States); 28 U.S.C. § 2201 (authorizing declaratory relief); and 5 U.S.C. § 702 (judicial review of agency action).  SBA regulations likewise provide for federal district court review of a decision of the SBA's Office of Hearings and Appeals ("OHA") pursuant to 13 C.F.R. § 134.1211(g).

17.     The SBA's promulgation of a rule stating that independent contractors cannot be included in PPP payroll costs, and the OHA's denial of full forgiveness to Seville, are final agency actions pursuant to 5 U.S.C. § 704 and 13 C.F.R. § 134.1211(c)(3), which this Court has authority to review pursuant to 5 U.S.C. § 702.

18.     Seville is a citizen of the State of Louisiana as each of its members are citizens of Louisiana.

19.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the State of Louisiana and have engaged in the conduct alleged herein in Louisiana, targeted to Louisiana residents, businesses, and/or interests.

20.     Seville has Article III standing because the SBA's denial of full loan forgiveness has caused a concrete injury which is redressable by this Court by granting Seville the relief requested herein.

21.     No other action, civil or criminal, is pending in any state court involving Seville regarding the activities and events stated herein.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events giving rise to this action have occurred and will continue to occur in the Western District of Louisiana within the Lafayette Division.

**IV.**
**STATEMENT OF FACTS**

**A.    The CARES Act and the Paycheck Protection Program**

23.     Congress passed the CARES Act on March 27, 2020, to provide financial assistance to the most vulnerable businesses hit by the COVID-19 pandemic – small businesses.

24.     As part of the CARES Act, $349 billion was allocated to the first round or "first draw" of the PPP to fund government-backed PPP Loans to help small businesses retain employees.  *See* CARES Act § 1102, 134 Stat. at 293.  Congress then appropriated an additional $310 billion for first draw loans in April 2020.  *See Paycheck Protection Program and Health Care Enhancement Act* § 101, Pub. L. No. 116–139, 134 Stat. 620 (April 24, 2020).  Later, in 2021, Congress appropriated another

$147 billion for "second draw" loans, which had narrower requirements. *Consolidated Appropriations Act*, Pub. L. No. 116–260, § 323, 134 Stat. 1182, 2018–19 (2020); *see id.* § 311, 134 Stat. at 2001–07.  This Complaint concerns a "first draw" PPP Loan, but the relief requested would be applicable to all PPP Loans.

25.     Congress charged the SBA with "modify[ing] existing loan programs and establish[ing] a new loan program to assist small businesses nationwide." *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020).  It also directed that the SBA "guarantee" PPP loans from private lending institutions to eligible small businesses. *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745 (6th Cir. 2020).

26.     The CARES Act provides that "***any business concern*** . . . shall be eligible to receive a covered loan," as long as the business concern does not employ more than a specific number of employees (for first draw loans, 500 employees).  15 U.S.C. § 636(a)(36)(D)(i) (emphasis added); *see id.* § 636(a)(36)(D)(i)(I)–(II).  By this language, the CARES Act mandates a "broad grant of eligibility." *DV Diamond Club*, 960 F.3d at 747.

27.     In its haste to get money into the hands of small business owners, the PPP (a) placed the impetus on borrowers and lenders participating in the PPP to certify eligibility for the program and loan calculations in the midst of constantly changing guidance; and (b) as such, SBA guidance has consistently provided that "Borrowers and lenders may rely on the laws, rules, and guidance available ***at the time of the relevant application***." SBA FAQ #17 (April 6, 2020) (emphasis added).[1]

28.     Congress made clear that lenders were required to entertain ***only two*** considerations in determining whether borrowers eligible for a PPP Loan: "whether the borrower . . . (aa) was in operation on February 15, 2020; and (bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; ***or (BB) paid independent contractors, as reported on a Form 1099-MISC***." 15

---

[1]     Available at https://www.sba.gov/sites/default/files/2020-04/Final%20PPP%20FAQs.pdf.

U.S.C. § 636(a)(36)(F)(ii)(II) (emphasis added).  Therefore, according to the plain language of the CARES Act, a business that paid *only* independent contractors and was in operation on February 15, 2020, would be eligible for a PPP Loan.

29.    In fact, the SBA's own application form ("SBA Form 2483") required Seville to certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form(s) 1099-MISC*."

30.    For eligible businesses, the CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" – and, in turn, the amount eligible for loan forgiveness – using a business's "payroll costs."  Pub. L. No. 116–136 §§ 1102, 1006, codified at 15 U.S.C. § 636(a)(36)(E)(i)(I)(aa), 636(a)(37)(J)(iii)(I).    "[P]ayroll costs" are defined to include "the sum of payments of *any compensation to* or income of a sole proprietor or *independent contractor* that is a wage, commission, income, net earnings from self-employment, or similar compensation," as long as it is not more than $100,000 in one year.  *Id.* § 636(a)(36)(A)(viii)(I)(bb) (emphasis added).

31.    The CARES Act provides that PPP Loans will be forgiven if the borrowers use the loan proceeds for eligible expenses like payroll costs.  The CARES Act *does not* provide that independent contractor compensation is to be excluded from calculation of the PPP Loan forgiveness amount.  *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).  Nor could it, without running afoul of the CARES Act eligibility requirements set forth above in paragraph 28. § 636(a)(36)(F)(ii)(II)(bb)(BB).

32.    The CARES Act sets forth types of compensation *excluded* from the definition of payroll costs, but does not list compensation paid to independent contractors.    *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).

**B.    The April 15, 2020 Interim Final Rule**

33.    Contrary to the CARES Act and its own Form 2483, the SBA issued an Interim Final Rule ("IFR") on April 15, 2020 that contained this Q&A:

> h. Do independent contractors count as employees for purposes of PPP loan calculations?
>
> No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation.

85 Fed. Reg. at 20813; *see also id.* at 20814 (same, with respect to loan forgiveness) (hereinafter, the "Independent Contractor Rule").

34.     The only reason or justification the agency provided for the Independent Contractor Rule was that independent contractors have the ability to apply for a PPP loan on their own.  *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20814 (April 15, 2020) ("Do independent contractors count as employees for purposes of PPP loan forgiveness? No, *independent contractors have the ability to apply for a PPP loan on their own* so they do not count for purposes of a borrower's PPP loan forgiveness." (emphasis added)).  But notably, independent contractors could not begin applying until April 10, 2020.[2]  Moreover, the SBA is well equipped to prevent double dipping by confirming whether or not independent contractor compensation has been included in the payroll costs of a small business, or whether the contractor applied for his or her own PPP loan.

35.     The IFR set forth a "methodology" for calculating borrowers' maximum loan amounts as follows:

> i. Step 1: Aggregate payroll costs . . . from the last twelve months for employees whose principal place of residence is the United States.
> ii. Step 2: Subtract any compensation paid to an employee in excess of an annual salary of $100,000 **and/or any amounts paid to an independent contractor or sole proprietor in excess of $100,000 per year**.
> iii. Step 3: Calculate average monthly payroll costs (divide the amount from Step 2 by 12).

---

[2]     *See* PPP -- Overview.pdf (treasury.gov); PPP Borrower Information Fact Sheet.pdf (treasury.gov); PPP--Fact-Sheet.pdf (sba.gov).

> iv. Step 4: Multiply the average monthly payroll costs from Step 3
> by 2.5.
> v. Step 5: Add the outstanding amount of an Economic Injury
> Disaster Loan (EIDL) made between January 31, 2020 and April 3,
> 2020, less the amount of any "advance" under an EIDL COVID-19
> loan (because it does not have to be repaid).

85 Fed. Reg. at 20812.  Thus, "amounts paid to an independent contractor" (under $100,000 per year)

are necessarily to be included in the payroll cost determination.

36.     The IFR became effective April 15, 2020. 85 Fed. Reg. at 20811.

**C.     Seville's PPP Loan and SBA's Denial of PPP Loan Forgiveness**

37.     Soon after Seville's management heard about the CARES Act and PPP, they decided to apply

for a first draw PPP Loan to ensure Seville could continue to employ and pay the individuals that

worked so hard to keep Seville in business.

38.     Seville's Lender, Loan Source, had the same understanding of the CARES Act.  In fact, Seville

used the lender's PPP loan calculator to calculate the loan amount, and this calculator directed Seville

to use independent contractor payroll costs in the loan amount.  Seville relied on this calculator and

the Lender's guidance.

39.     The SBA's own Form 2483 reinforced this approach.  It required Seville to certify that it "had

employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported*

*on Form(s) 1099-MISC*."  It also required Seville to certify that it was eligible to receive a loan "under

the rules in effect at the time of this application."  And the CARES Act itself provided that borrowers

could include as payroll costs "any compensation to or income of a sole proprietor or independent

contractor." 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb).

40.     Although the IFR was not yet effective at the time of Borrower's application, it likewise

reinforced this approach.  It directed borrowers to "[a]ggregate [their] payroll costs" from the prior

year and then "[s]ubtract . . . *any amounts paid to an independent contractor or sole proprietor in*

*excess of $100,000 per year*."  85 Fed. Reg. at 20812 (emphasis added).  This necessarily implies that

amounts paid to independent contractors were part of "payroll costs," which is in direct conflict with the Independent Contractor Rule set forth in the same IFR.

41.     On April 7, 2020, Seville submitted its PPP Loan application to Loan Source for loan proceeds of $2,578,351.00, which included independent contractor compensation in its calculation of the PPP Loan amount.  Seville's decision to include independent contractor compensation was based on the guidance of Congress, the SBA, and the Lender.

42.     On April 17, 2020, in Kaplan, Louisiana, Wendell Wade Dupuis, Member of Seville Industries, signed a Promissory Note for the full PPP Loan amount requested.

43.     On April 17, 2020, Loan Source deposited the $2,578,351.00 of loan proceeds into Seville's business checking account.

44.     Neither Loan Source nor an SBA representative advised Seville to return any part of the PPP Loan. Further, there was no guidance from the SBA or Treasury that would have alerted Seville to return any part of the PPP Loan.  However, out of an abundance of caution, Seville decided not to use the PPP Loan proceeds for independent contractor paychecks. Beginning with its first post-Loan payroll on May 8, 2020, Seville used the PPP Loan proceeds for W-2 employee compensation and other approved non-payroll expenses *only*.

45.     Early in the PPP, borrowers had only 8 weeks to expend the loan proceeds (known as the "covered period").  Staying true to Congress' "core purpose" of keeping workers on payroll, the SBA decided borrowers were permitted to use no more than 25% of the PPP Loan proceeds on non-payroll costs such as rent, utilities, and mortgage interest. 85 Fed. Reg. at 20813.

46.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act ("PPPFA"), which gave borrowers the option of extending the covered period from 8 to 24 weeks. The PPPFA also permitted borrowers to spend up to 40% on non-payroll expenses. *See Paycheck Protection Program Flexibility Act of 2020*, Pub. L. No. 116–142, § 3, 134 Stat. 641 (June 5, 2020).

During its 24-week covered period from April 17, 2020, to October 1, 2020, Seville utilized the PPP loan for payroll costs to W-2 employees, and for non-payroll costs such as rent and utility costs.

47.     Seville's controller Matt Nunez worked with a Loan Source officer to complete all required forms and upload all supporting documentation for Seville's PPP Loan forgiveness application.

48.     Continuing to abide by SBA guidelines, Seville calculated a requested forgiveness amount of $2,578,351.  Loan Source filed Seville's PPP Loan forgiveness application with the SBA on or around August 20, 2021.  In so doing, Loan Source requested that the SBA forgive the entire $2,578,351 loan amount.

49.     After a series of requests for production of documents, on March 28, 2022, the SBA issued a final loan decision granting partial forgiveness to Seville in the amount of $687,508.64, thus requiring Seville to pay back $1,890,842.36 with interest.

50.     Pursuant to 13 C.F.R. sections 134.102(w) and 134.1201, Seville exhausted its administrative remedies by filing an appeal of the SBA's partial forgiveness decision with the OHA on April 29, 2022.

51.     On September 29, 2022, the OHA issued an "initial decision" upholding the SBA's decision.

52.     On October 10, 2022, Seville filed a petition for reconsideration pursuant to 13 C.F.R. § 134.1211(c).

53.     On October 24, 2022, the OHA denied Seville's petition for reconsideration.

54.     The OHA's initial decision became an appealable, final decision 30 calendar days later, on November 23, 2022.  *See* 13 C.F.R. § 134.1211(c)(3) ("A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service . . . .").

55.     This Complaint is filed within 30 calendar days of the OHA's final decision.

**V.**
**COUNT ONE**

**Claim for Declaratory Judgment and Permanent Injunction:**

### Independent Contractor Rule is Arbitrary and Capricious and Contrary to Law
### 28 U.S.C. §§ 2201, 2202

56.    Seville incorporates Paragraphs 1 through 55 as if set forth verbatim herein.

57.    On April 15, 2020, as part of the IFR, the SBA made effective the Independent Contractor Rule. This Rule provided that, because "independent contractors have the ability to apply for a PPP loan on their own," they "do not count for purposes of a borrower's PPP loan calculation." 85 Fed. Reg. at 20813.

58.    Since that time, the SBA has continued to issue FAQs and other guidance consistent with this Rule. *See, e.g.*, *SBA Procedural Notice*, Control No. 5000-20078 (Jan. 15, 2021) (issuing guidance that if a borrower "mistakenly included payments to an independent contractor in its calculation of payroll costs on its PPP Borrower Application Form" and as a result, the "loan amount approved for the borrower exceeded the borrower's correct maximum loan amount," then forgiveness "will be denied for the ineligible portion and the borrower must begin making payments on the remaining loan amount"); *Small Business Administration, Paycheck Protection Program Loans: FAQs* (Jan. 29, 2021) (FAQ on SBA website: "Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs.").[3]

59.    However, the Independent Contractor Rule and subsequent agency guidance contravene the plain language and purpose of the CARES Act.

60.    The CARES Act makes clear that PPP Loans are meant to keep *all* American workers paid, including independent contractors, and not just W-2 employees. The main purposes of the CARES Act are to "keep[] American workers paid and employed," 15 U.S.C. Ch. 16, Subchapter I, and to "assist small businesses nationwide adversely impacted by the COVID-19 emergency," 85 Fed. Reg.

---

[3]    Available at https://www.sba.gov/sites/default/files/2021-01/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.

at 20811. The CARES Act does not delineate between independent contractors and other types of "American workers."

61.    The CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" – and, in turn, the amount eligible for loan forgiveness – using a business's "payroll costs."  Pub. L. No. 116–136 §§ 1102, 1006, *codified at* 15 U.S.C. § 636(a)(36)(E)(i)(I)(aa), 636(a)(36)(J)(iii)(I).

62.    "[P]ayroll costs" are defined to include "the sum of payments of *any compensation to* or income of *a[n]* . . . *independent contractor* that is a wage, commission, income, net earnings from self-employment, or similar compensation," as long as it is not more than $100,000 in one year.  § 636(a)(36)(A)(viii)(I)(bb) (emphasis added).

63.    The CARES Act also provides that, when "evaluating the eligibility of a borrower" for a PPP Loan, the assigned lender "shall consider whether the borrower . . . had employees for whom the borrower paid salaries and payroll taxes; *or* [] *paid independent contractors, as reported on a Form 1099-MISC*."  15 U.S.C. § 636(a)(36)(F)(ii)(II)(bb) (emphasis added).

64.    The CARES Act lists exclusions to the definition of payroll costs – including compensation to workers outside of the United States and compensation in excess of $100,000 per year – but it *does not* list compensation paid to independent contractors as an exclusion.  *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).  Congress's choice not to include independent contractor compensation as an exclusion was clearly a deliberate one.  *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that pursuant to the statutory construction canon *expressio unius est exclusio alterius*, items expressed in a statute that are "members of an associated group or series justify[] the inference that items not mentioned were excluded by deliberate choice, not inadvertence").

65.    The statutory history and the context of the CARES Act strongly support that the CARES Act mandates a "broad grant of eligibility," *DV Diamond Club,* 960 F.3d at 747, applying to *every* business concern of the specified size, no matter the type of workers employed.

66.     The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

67.     The Independent Contractor Rule violates the CARES Act's language and purpose by impermissibly imposing a prerequisite to loan forgiveness that is not contemplated by the Act itself.

68.     In addition, the IFR itself is internally inconsistent. "Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action." *Sw. Elec. Power Co. v. U.S. Env't Prot. Agency*, 920 F.3d 999, 1021 (5th Cir. 2019) (quoting *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Lab.*, 885 F.3d 360, 382 (5th Cir. 2018)).  Under the heading "What do borrowers need to  know and do?" and subheading "Am I eligible?" the IFR explains that an entity is eligible for a PPP Loan if it "paid independent contractors, as reported on a Form 1099-MISC." 85 Fed. Reg. at 20811.  Under the heading "What certifications need to be made?" the IFR explains that the borrower must certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on a Form 1099-MISC*." *Id.* at 20813 (emphasis added).  Yet under the Independent Contractor Rule, an eligible business paying only independent contractors would have no "payroll costs."

69.     Moreover, the IFR is internally inconsistent in that it directs borrowers to use compensation paid to independent contractors in the calculation of payroll costs, 85 Fed. Reg. at 20812, but also says that such contractors "do not count for purposes of a borrower's PPP loan calculation," *id.* at 20813.

70.     This Court is not required to give controlling weight to the SBA's interpretation of the CARES Act because it is "arbitrary, capricious, [and] manifestly contrary to the statute." *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 430 (5th Cir. 2000) (quoting *Chevron v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

71.     Incorporating the foregoing, Seville respectfully requests that this Court declare the following: (a) the SBA committed an error of law in the case at hand by excluding independent contractor pay from the calculation of Seville's maximum loan amount and granting only partial forgiveness; and (b) the SBA's Independent Contractor Rule – made effective in the April 15, 2020 IFR – is arbitrary, capricious, and contrary to law.

72.     Seville also respectfully requests that this Court issue a permanent injunction barring Defendants from applying the Independent Contractor Rule to *any* loan forgiveness request – or withholding forgiveness or funds with respect thereto – but especially those applicants who applied for a PPP Loan before the effective date of the Independent Contractor Rule, April 15, 2020.

**VI.**
**COUNT TWO**

**Claim to Set Aside Agency Action That is Arbitrary,**
**Capricious, Contrary to Law, and Exceeds Statutory Authority**
**5 U.S.C. § 706(2)(A) and (C)**

73.     Seville incorporates Paragraphs 1 through 72 as if set forth verbatim herein.

74.     The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

75.     The Independent Contractor Rule is arbitrary, capricious, and contrary to law for all of the reasons set forth under Count One.

76.     In addition, the SBA – by its OHA decision in this case and its promulgation of the Independent Contractor Rule – has acted contrary to law and has exceeded its statutory authority retroactively applying the Independent Contractor Rule to Seville's PPP Loan application.

77.     Federal regulations do not and cannot apply retroactively unless Congress has authorized that step explicitly.  *Jahn v. 1-800-Flowers.com, Inc.,* 284 F.3d 807, 810 (7th Cir. 2002).  This is due in part to the presumption against retroactivity. The Supreme Court has stated that, "[e]lementary

considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . ." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994). For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 855 (1990)).  The intent of the presumption is to "avoid unnecessary *post hoc* changes to legal rules on which parties relied in shaping their primary conduct."  *Austria v. Altmann,* 541 U.S. 677, 696 (2004).

78.    By its terms, the IFR in which the Independent Contractor Rule appears is "effective April 15, 2020."  85 Fed. Reg. at 20811.

79.    The SBA issued guidance on April 6, 2020, that borrowers and lenders "may rely on the laws, rules, and guidance available ***at the time of the relevant application***." SBA FAQ #17 (April 6, 2020) (emphasis added).

80.    Despite this, Defendants impermissibly applied the Independent Contractor Rule retroactively to Seville's PPP Loan application by denying full forgiveness on the grounds that Seville was not eligible for the full loan amount at the time of the application.

81.    In addition, Seville *did not* use any of the PPP Loan proceeds to pay independent contractors. Thus, the purpose the Rule was trying to advance was not contravened.

82.    Seville respectfully requests a declaration that (a) the Independent Contractor Rule is not applicable to Seville's PPP loan and forgiveness thereof; (b) Defendants' refusal to forgive Seville's PPP loan forgiveness exceeds the Defendants' statutory authority and violates the CARES Act and APA; (c) Defendants' retroactive application of the Independent Contractor Rule is contrary to law and exceeds Defendant's statutory authority; and (d) Seville's PPP loan should be fully forgiven.

83.      For all of these reasons, Seville also asks this Court to vacate and set aside the OHA's decision upholding the SBA's grant of partial forgiveness and remand to the SBA with instructions to fully forgive Seville's PPP Loan.

**VII.**
**COUNT THREE**

**Claim to Set Aside Agency Action that is Arbitrary and Capricious**
**and an Abuse of Discretion**
**5 U.S.C. § 706(2)(A)**

84.      Seville incorporates Paragraphs 1 through 83 as if set forth verbatim herein.

85.      The Independent Contractor Rule is arbitrary, capricious, and an abuse of discretion for two additional reasons. First, the SBA fell painfully short of sufficiently explaining its rationale for the Independent Contractor Rule, and the brief reasoning it *did* provide in the IFR is not applicable to this case. Second, in setting forth the Independent Contractor Rule, the agency failed to follow proper notice-and-comment procedures pursuant to the APA.

86.      **First**, for an agency action to be upheld by the federal courts, the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). As part of this "satisfactory explanation," the agency must articulate a "rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *State Farm*, 463 U.S. at 43).

87.      The SBA failed to sufficiently explain why it set forth and adopted the Independent Contractor Rule in the IFR.

88.      The IFR itself contemplated that independent contractor wages were included in the calculation of the maximum loan amount.  Moreover, the SBA's own application form asked borrowers to certify that they "had employees for whom it paid salaries and payroll taxes ***or paid independent contractors, as reported on Form(s) 1099-MISC***."

89.    Yet the SBA provided *one phrase* in support of its conception of the Independent Contractor Rule: that is, "independent contractors have the ability to apply for a PPP loan on their own." 85 Fed. Reg. at 20813.

90.    This 14-word explanation falls woefully short of a "satisfactory explanation."

91.    In any event, independent contractors were *not* able to apply for PPP Loans until April 10, 2020.  And Seville *did not* use any of the PPP Loan proceeds to pay independent contractors. Thus, the purpose that the Independent Contractor Rule purported to advance was not contravened.

92.    **Second**, pursuant to the APA, agencies may only promulgate rules after a proper notice-and-comment period. The agency "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," and then, "[a]fter consideration of the relevant matter presented," "shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). However, there is an exception: "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," it may promulgate so-called interim final rules without accepting and responding to pre-promulgation comments.  *Id.* § 553(b)(3)(B).

93.    The exception to the notice-and-comment procedure mentioned above must be "narrowly construed" and "only reluctantly countenanced."  *State of N. J., Dep't of Env't Prot. v. U.S. Env't Prot. Agency*, 626 F.2d 1038, 1045 (D.C. Cir. 1980).

94.    The SBA has not and cannot demonstrate good cause for failing to engage in a notice-and-comment procedure with regard to the Independent Contractor Rule, at least as it is applicable to the loan forgiveness process. The Rule provides an exclusion of independent contractor wages from loan calculations on a permanent basis. Independent contractors are essential to the performance of

American businesses.  American small businesses depend on these workers in the same way they depend on W-2 employees to run successful and thriving businesses.

95.     Any claim of "emergency" relief justifying good cause to forego notice-and-comment procedures has no bearing on, and is not tailored to, the forgiveness process. Whereas the loan *origination* process was expeditiously implemented to combat the onset of the pandemic, the forgiveness process was simply not as urgent.

96.     For all of these reasons, and those set forth elsewhere in this Complaint, Seville is entitled to an order declaring the Independent Contractor Rule arbitrary, capricious, and an abuse of discretion; and an order setting aside the OHA's decision and remanding with instructions to grant full forgiveness of Seville's PPP Loan.

## VIII.
## COUNT FOUR
### Suspension of OHA Final Decision

97.     Seville incorporates Paragraphs 1 through 96 as if set forth verbatim herein.

98.     Pursuant to 5 U.S.C. § 705, to prevent irreparable injury to Seville, Seville requests that this Court stay and postpone the enforcement of OHA's final decision pending judicial review, and direct that Seville's period of loan deferment be extended until resolution of this action.

## PRAYER

WHEREFORE, Seville Industries, LLC, respectfully prays that the Court order the following relief:

    a.  Declare that the Independent Contractor Rule is not authorized by law and is contrary to law;

    b.  Declare that the Independent Contractor Rule is arbitrary and capricious, exceeds Defendants' statutory authority, and violates the APA;

    c.  Declare that the Independent Contractor Rule is not applicable to Seville's PPP Loan and forgiveness thereof;

d. Declare that Defendants' retroactive application of the Independent Contractor Rule is contrary to law and exceeds Defendant's statutory authority;

e. Hold unlawful and set aside the Independent Contractor Rule;

f. Vacate and set aside the OHA's final decision denying Seville full forgiveness of its PPP Loan, and instruct Defendants to grant full forgiveness of the Loan and interest;

g. Permanently enjoin Defendants from enforcing the Independent Contractor Rule, including applying the Rule to deny any request for a loan forgiveness amount that includes independent contractor wages, or otherwise withholding funds or forgiveness based on the Rule;

h. Stay and postpone the OHA's final decision and direct that Seville's period of loan deferment be extended until resolution of this action;

i. Award reasonable attorneys' fees and costs to the extent permitted by law; and

j. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ T. Peyton Smith*
T. Peyton Smith, LA Bar No. 34984
FORMAN WATKINS & KRUTZ LLP
201 St. Charles Ave., Suite 2100
New Orleans, LA 70170
Telephone: (504) 799-4383
Facsimile: (504) 799-4384
Peyton.Smith@formanwatkins.com

Jennifer M. Studebaker,* MS Bar No. 10433
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Telephone: (601) 973-5983
Facsimile: (601) 960-8613
Jennifer.Studebaker@formanwatkins.com

Jared M. Tully,* WV Bar No. 9444
Mary Claire Davis,* WV Bar No. 10854
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301

Telephone: (304) 345-0111
Facsimile: (304) 345-0115
jtully@fbtlaw.com
mcdavis@fbtlaw.com

*\* pro hac vice forthcoming*

**ATTORNEYS FOR PLAINTIFF, SEVILLE INDUSTRIES LLC**

0150517.0756046  4887-9157-6389v2