UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **SEVILLE INDUSTRIES LLC** | ) | Civil Action No. 22-cv-06229 |
| | ) | |
| versus | ) | JUDGE DAVID C. JOSEPH |
| | ) | |
| **US SMALL BUSINESS ADMIN., ET AL.** | ) | MAGISTRATE JUDGE WHITEHURST |
| | ) | |

### RESPONSE TO PLAINTIFF'S STATEMENT OF <u>UNCONTESTED MATERIAL FACTS</u>

Defendants respond to Plaintiff's Statement of Uncontested Material Facts as follows:

1. The CARES Act states that an approved lender, in determining eligibility for a borrower of a covered loan, "shall consider" whether (1) the borrower

> (aa) was in operation on February 15, 2020; **and** [(2) either]
>
> (bb)(AA) had employees for whom the borrower paid salaries
>
> and payroll taxes; <u>**or**</u>
>
> (BB) **paid independent contractors**, as reported on a Form
>
> 1099- MISC."

15 U.S.C. § 636(a)(36)(F)(ii)(II).

    **Response: Not disputed.**

2. The CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" that a company may claim in its PPP application using a business's "payroll costs." 15 U.S.C. § 636(a)(36)I(i)(I)(aa), 636(a)(36)(J)(iii)(I).

> **Response: Disputed as written. The CARES Act sets forth a formula for calculating a borrower's maximum loan amount that is based (in part) on the borrower's average monthly "payroll costs," a defined term under the CARES**

Act.  15 U.S.C. § 636(a)(36)(A)(viii).

3. The CARES Act defines "payroll costs" to include "the sum of payments of **any compensation to** or income of **a s**ole proprietor or **independent contractor**." 15 U.S.C. § 636(a)(36)(A)(viii)(I).

**Response:  Disputed as written.  That is only a part of the definition of "payroll costs" set forth in the CARES Act. The entire definition of "payroll costs" set forth in the CARES Act reads as follows: "(viii) the term 'payroll costs'— (I) means— (aa) the sum of payments of any compensation with respect to employees that is a— (AA) salary, wage, commission, or similar compensation; (BB) payment of cash tip or equivalent; (CC) payment for vacation, parental, family, medical, or sick leave; (DD) allowance for dismissal or separation; (EE) payment required for the provisions of group health care benefits, including insurance premiums; (FF) payment of any retirement benefit; or (GG) payment of State or local tax assessed on the compensation of employees; and (bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self employment, or similar compensation and that is in an amount that is not more than $100,000 in 1 year, as prorated for the covered period; … ." 15 U.S.C. § 636(a)(36)(A)(viii)(I).**

4. The CARES Act sets forth types of compensation *excluded* from the definition of payroll costs. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

**Response:  Not disputed.**

5. Compensation paid to independent contractors is not among the express exclusions contained in 15 U.S.C. § 636(a)(36)(A)(viii)(II).

**Response: Disputed as written and as allegation/argument.**

6. SBA Form 2483 required every PPP Loan applicant to certify that it either "had employees for whom it paid salaries and payroll taxes **or paid independent contractors**, as reported on Form(s) 1099-MISC." (A.R. 000029; SBA Form 2483, "PPP First Draw Borrower Application Form.")

**Response: Disputed as written and as allegation/argument. Not disputed.**

7. The SBA has consistently affirmed that "Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application." SBA FAQ #17 (April 6, 2020).

**Response: Not disputed.**

8. The timeline of Seville's PPP Loan is not in dispute. On April 7, 2020, Seville applied for a PPP Loan from Loan Source (the "Lender") based on a maximum loan amount of $2,578,351.00.

**Response: Not disputed.**

9. Seville calculated its maximum loan amount based on "payroll costs" as defined by the CARES Act.

**Response: Disputed.**

10. Seville included compensation it had made to its independent contractors as payroll costs in its calculation of the maximum loan amount. (A.R. 000036, 001389.)

**Response: Not disputed.**

11. On April 9, 2020, Seville's PPP Loan Application was approved, without objection, in the maximum loan amount by the SBA. (A.R. 001209-10.)

**Response: Disputed as written, as inaccurate. PPP loans were approved by**

3

**participating lenders under delegated authority as mandated by the CARES Act, not by SBA.  15 U.S.C. § 636(a)(36)(F)(ii).**

12.  The SBA promulgated various Interim Final Rules ("IFRs") and Frequently Asked Questions ("FAQs") interpreting the parameters of the PPP Loan program.

**Response:  Not disputed.**

13.  The SBA issued an IFR on April 15, 2020 that contained this Q&A:

> h.  Do independent contractors count as employees for purposes of PPP loan calculations?
>
> No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation.

**(**85 Fed. Reg. at 20813.); *see also* (85 Fed. Reg. at 20814.) (same, with respect to PPP Loan forgiveness).

**Response:  Not disputed.**

14.  The only reasoning the SBA provided for enacting the Independent Contractor Rule was that independent contractors can apply for a PPP Loan on their own. (85 Fed. Reg. at 20813-14.)

**Response:  Disputed as written. SBA provided its reasoning in the IFR as cited.**

15.  Independent contractors, however, could not begin applying for a PPP Loan on their own behalf until April 10, 2020 – three days after Seville had submitted its PPP Loan application.[1]

**Response:  Disputed as written, as inaccurate.  No provision of the PPP nor any rule issued by SBA, including the IFR published on April 15, 2020, prohibited independent contractors from applying for PPP loans until April 10, 2020. SBA**

---

[1] *See* https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf.

**opened the program on April 3, 2020, to all eligible borrowers, without distinction.**

16. By its own terms, the Independent Contractor Rule did not become effective until April 15, 2020. (85 Fed. Reg. at 20811.)

**Response: Disputed as written. It is undisputed that the first interim final rule outlining the general requirements of the PPP was published in the Federal Register on April 15, 2020, and had an effective date of April 15, 2020.**

17. By its own terms, the Independent Contractor Rule had "no preemptive or retroactive effect." (85 Fed. Reg. 20817.)

**Response: Disputed as written. It is undisputed that the first interim final rule, as cited, stated that it had "no preemptive or retroactive effect."**

18. On April 17, 2020, Wendell Wade Dupuis, a Member of Seville, signed a Promissory Note for the full PPP Loan amount, and the Lender funded Seville's PPP Loan in the maximum loan amount. (A.R. 000024, 001209-10.)

**Response: Not disputed.**

19. Seville applied for, and utilized, the proceeds of the PPP Loan to protect the continued employment of its employees. *See* A.R. 000033, 000054 (providing a breakdown of how Seville allocated the proceeds of the Loan).

**Response: Disputed as allegation/argument and immaterial.**

20. None of the PPP Loan proceeds that Seville received were used to pay independent contractors. (A.R. 001128, 001286, 001290-91.)

**Response: Disputed as allegation/argument and immaterial.**

21. On August 20, 2021, the Lender approved and submitted Seville's PPP Loan forgiveness application to the SBA for approval on August 20, 2021. (A.R. 000100.)

**Response: Not disputed.**

22. On March 18, 2022, the SBA issued a decision granting only partial forgiveness of the PPP Loan in the amount of $687,508.64 and requiring Seville to pay back $1,890,842.36 to the SBA, with interest. (A.R. 000100-101.)

**Response: Disputed as written. It is undisputed that SBA issued a decision granting only partial forgiveness of the PPP loan in the amount of $687,508.64 and remitted that forgiveness payment to the lender. In accordance with the CARES Act and implementing regulations, if there is an outstanding balance remaining on a PPP loan after loan forgiveness has been remitted, the borrower is required to repay the outstanding balance with interest to the lender (not SBA).**

23. The SBA's forgiveness decision was based on the allegation that Seville had been ineligible to receive $1,890,842.36 of the Loan proceeds because payroll costs made to independent contractors were included in Seville's original loan calculation. (A.R. 000100-101, 001389.)

**Response: Disputed as written. It is undisputed that the SBA determined the Plaintiff was ineligible for the loan amount received because the maximum loan amount was not properly calculated.**

24. The SBA's forgiveness decision cited no statutory or regulatory support for this determination. (A.R. 000100-101.)

**Response: Disputed as irrelevant and immaterial.**

25. On April 29, 2022, Seville filed an appeal of the SBA's forgiveness decision with the SBA's Office of Hearings and Appeals ("OHA"). (A.R. 000001-000014.)

**Response: Not disputed.**

26. On September 29, 2022, the OHA issued an "initial decision" upholding the SBA's decision to deny full forgiveness of Seville's Loan. (A.R. 001412-001422.)

**Response: Not disputed.**

27. On October 11, 2022, Seville filed a petition for reconsideration with the OHA pursuant to 13 C.F.R. § 134.1211(c). (A.R. 001423-001426.)

**Response: Disputed as written. The OHA decision on the petition for reconsideration states the borrower filed the petition on October 21, 2022.**

28. On October 24, 2022, the OHA denied Seville's petition for reconsideration. (A.R. 001428-30.)

**Response: Not disputed.**

29. The OHA's initial decision became an appealable, final decision thirty calendar days later on November 23, 2022. 13 C.F.R. § 134.1211(c)(3).

**Response: Not disputed.**

30. On August 9, 2022, an ALJ in a similar OHA appeal determined that, "Applying the [Independent Contractor Rule] to *all* PPP loans – even those prior to the effective date — would contradict the plain language of the IFR that it has 'no preemptive or retroactive effect.'" *See* Exhibit A attached to Plf.'s Mem. in Supp. of Mot. for Summary Judgment at *5.

**Response: Disputed as written, as irrelevant and immaterial. Plaintiff cites a single OHA decision. Further, "neither initial nor final decisions rendered by OHA under [subpart L] are precedential." 13 C.F.R. § 134.1211(e).**

31. In the same above-referenced August 9, 2022 OHA appeal, the ALJ determined that the SBA's retroactive application of the Independent Contractor Rule to a loan application filed on April 5, 2020 was "clear error." *Id.* at *6.

**Response: Disputed as written, as irrelevant and immaterial. Plaintiff cites a single OHA decision. Further, "neither initial nor final decisions rendered by OHA under [subpart L] are precedential." 13 C.F.R. § 134.1211(e).**

32. On December 22, 2022, the above-referenced August 9, 2022 OHA decision was upheld upon reconsideration. *See* Exhibit B attached to Plf.'s Mem. in Supp. of Mot. for Summary Judgment.

**Response: Disputed as written, as irrelevant and immaterial. Plaintiff cites a single OHA decision. Further, "neither initial nor final decisions rendered by OHA under [subpart L] are precedential." 13 C.F.R. § 134.1211(e).**

        Respectfully submitted,

        BRANDON B. BROWN
        United States Attorney

BY:   *s/ Karen J. King*
        KAREN J. KING (#23508)
        Assistant United States Attorney
        800 Lafayette Street, Suite 2200
        Lafayette, Louisiana 70501
        Telephone: (337) 262-6618
        Facsimile: (337) 262-6693
        Email: karen.king@usdoj.gov