UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SEVILLE INDUSTRIES LLC                    CIVIL DOCKET NO. 6:22-CV-06229

VERSUS                                    JUDGE DAVID C. JOSEPH

U.S. SMALL BUSINESS                       MAGISTRATE JUDGE CAROL B.
ADMINISTRATION, ET AL                     WHITEHURST

<u>MEMORANDUM RULING</u>

Before the Court are two cross motions for summary judgment: (i) MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 23] filed by Plaintiff Seville Industries LLC ("Plaintiff" or "Seville") and (ii) CROSS MOTION FOR SUMMARY JUDGMENT (the "Cross Motion") [Doc. 29] filed by Defendants United States Small Business Administration ("SBA"), Isabelle Casillas Guzman,[1] and Janet Yellen[2] (collectively, "Defendants"). For the following reasons, Plaintiff's Motion is DENIED, and Defendants' Cross Motion is GRANTED.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This lawsuit arises out of the Plaintiff's small business loan under the Paycheck Protection Program ("PPP"). The PPP was enacted by Congress on March 27, 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), a comprehensive aid package designed to provide trillions of dollars in emergency assistance to individuals, families, and health-care providers coping

---

[1]     Isabelle Casillas Guzman is sued in her official capacity as the Administrator of the SBA.

[2]     Janet Yellen is sued in her official capacity as the Secretary of the Treasury.

with the coronavirus pandemic.  Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act").  The PPP was specifically designed to help small businesses by providing forgivable federally guaranteed loans to maintain small business payrolls during the pandemic era economic shutdowns.[3]  *See* SBA, Business Loan Program Temporary Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20,811, 20,811-12 (Apr. 15, 2020) ("First PPP IFR").

The SBA was enacted in 1958 to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns."  Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. §631(a), *et seq*.); *see also* 15 U.S.C. § 633(a) (establishing the SBA).  The SBA's primary mechanism for aiding small businesses is by financing private "Section 7(a) loans" under the Small Business Act.  15 U.S.C. § 636(a).  Although the SBA guarantees these loans, they are typically issued by private lenders rather than through direct disbursals from the SBA.  *Id.*; *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3, 99 S. Ct. 1448, 59 L.Ed.2d 711 (1979).  In addition to creating Section 7(a) loans, the Small Business Act authorizes the SBA Administrator to "make such rules and regulations as [s]he deems necessary" to implement the loan program.  15 U.S.C. § 634(b)(6); *Id.* at § 634(b)(7) (vesting the SBA Administrator with the authority to create rules and "take any and all actions ... when [s]he determines such actions are necessary or desirable in

---

[3]      The CARES Act made $659 billion of government-guaranteed loans available to qualified small businesses through the PPP.  *In re Hidalgo Cnty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020).

making, servicing, ... or otherwise dealing with or realizing on loans made under the provisions of [the Act]").

Section 1102(a)(2) of the CARES Act established the PPP as a temporary expansion of SBA's pre-existing business-loan authority by adding a new paragraph – Paragraph 36 – to Section 7(a), 15 U.S.C. § 636(a)(36). Importantly, the PPP was not created as a standalone program; instead it was added into Section 7(a), albeit with several of that subsection's general eligibility requirements relaxed. CARES Act, § 1102, 134 Stat. at 286 (amending § 7(a)). Section 636(a)(36)(B) expressly states that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] loans under the same terms, conditions, and processes as [other] loan[s] made under" Section 7(a). *Id.* at § 636(a)(36)(B). Additionally, Section 1106 of the CARES Act, as amended, allows eligible recipients of PPP loans to obtain forgiveness of their loans in whole or in part. 15 U.S.C. § 636m(b)-(d). Under the CARES Act, the amount of forgiveness for which a PPP borrower is eligible is generally calculated as "the sum of" its "[p]ayroll costs" and the seven other categories of covered expenses incurred during the covered period. *Id.* § 636m(b); *see id.* at § 636m(a)(4). "[P]ayroll costs" has the same meaning for loan-forgiveness purposes as for calculating a borrower's maximum loan amount. *Id.* at § 636m(a)(12).

It is clear from the text of the CARES Act and the implementing regulations that the PPP was to be quickly put into effect give the unprecedented national health and economic crisis. To that end, the CARES Act authorized the SBA to guarantee up to $349 billion in PPP loans during the initial three-month period ending on June 30, 2020. 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B). Congress also streamlined Section

7(a) loan-origination requirements for PPP borrowers by, for example, eliminating borrower collateral and personal loan-guarantee requirements. *Id.* at § 636(a)(36)(J). The SBA also permitted additional qualified lending institutions that were not already accredited Section 7(a) lenders to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* at § 636(a)(36)(F)(ii)(I), (iii). Congress gave the SBA only 15 days to issue rules, 15 U.S.C. § 9012, described as "warp speed for regulatory action." *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1262 (11th Cir. 2020). Recognizing that the rulemaking deadline would otherwise be impossible, Congress freed the SBA from the typical notice requirements associated with the federal rulemaking process. 15 U.S.C. § 9012.

Pursuant to its congressionally mandated authority under 15 U.S.C. § 9012, the SBA issued several interim final rules ("IFRs") implementing the PPP. The stated purpose of the First IFR was to "outline[ ] the key provisions of the PPP" by setting forth borrower eligibility and application requirements for PPP loans, 85 FR 20,812-15 (§ III(2)), and lenders' responsibilities under a streamlined PPP underwriting process. *Id.* at 20,815-16 (§ III(3)). Relevant here, the First IFR also explained: (i) that under the terms of the CARES Act, the maximum size of a PPP loan was calculated "using a payroll-based formula specified in the Act," *Id.* at 20,812 (§ III(2)(d) and (e)); (ii) that "payroll costs" for this purpose consisted of compensation to employees residing principally in the United States, "and for an independent contractor or sole proprietor," compensation in the form of wages, commissions, income, or net earnings from self-employment, *Id.* at 20,813 (§ III(2)(f)); and (iii) that

independent contractors "do not count for purposes of a borrower's PPP loan calculation" or "PPP loan forgiveness" because they "have the ability to apply for a PPP loan on their own" [hereinafter, the "Independent Contractor Rule" or "ICR"], *Id.* at 20,813, 20,814 (§ III(2)(h), (p)).  The First IFR was posted on the SBA and Treasury websites on April 2, 2020, with an effective date of April 15, 2020, and expressly "applie[d] to applications submitted under the [PPP] through June 30, 2020, or until funds made available for this purpose are exhausted."  *Id.* at 20,811.

On April 7, 2020, Plaintiff applied for a PPP loan in the amount of $2,578,351.00 from an SBA-approved lender, Loan Source Inc. (the "Lender").  [Doc. 22-6].[4]  In calculating its "payroll costs" on the loan application, Plaintiff included

---

[4]     Plaintiff argues it was permitted to borrow the maximum amount under the CARES Act.  The CARES Act defines "maximum loan amount" as:

> **(E)     Maximum Loan Amount**
>
> Except as provided in subparagraph (V), during the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of—
>
> (i)(I) the sum of—
>
> (aa) the product obtained by multiplying—
>
> (AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made, except that an applicant that is a seasonal employer shall use the average total monthly payments for payroll for any 12-week period selected by the seasonal employer between February 15, 2019, and February 15, 2020; by (BB) 2.5; and

payments it had made to its independent contractors. [Doc. 22-22, pp. 3-4]. The Lender submitted Plaintiff's application to the SBA for approval, and the SBA approved the full amount requested on April 9, 2020.

On August 20, 2021, Plaintiff applied for full forgiveness of its PPP Loan. [Doc. 22-7, pp. 1-3]. On March 28, 2022, the SBA issued its PPP Final SBA Loan Review Decision, in which the SBA determined that the Plaintiff was only entitled to partial forgiveness, as follows:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount. … Total payroll costs for the reference period equal $3,300,041.47, resulting in an average monthly payroll cost of $275,003.46 and a maximum eligible loan amount of $687,508.64.

> Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $687,508.64 is appropriate.

[Doc 22-3, pp. 1-2].

On March 29, 2022, the SBA remitted to the Plaintiff $687,508.64 in principal and $13,392.29 in interest. [Doc. 22-20, p. 82]. On April 29, 2022, Plaintiff appealed the SBA's decision to the SBA Officer of Hearings and Appeals ("OHA"), which denied

---

> (bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020, and ending on the date on which covered loans are made available to be refinanced under the covered loan; or

> [ . . ]

> (ii) $10,000,000.

15 U.S.C.A. § 636(E).

the Plaintiff's appeal.  [Doc. 22-22].  Plaintiff filed a petition for reconsideration [Doc. 22-23], which was denied on October 24, 2022.  [Docs. 22-23, 22-25].  In accordance with 13 C.F.R. § 134.1211(g), Plaintiff timely filed an appeal of the SBA's final agency decision in this Court.  [Doc. 1].

On December 22, 2022, the Plaintiff filed a Complaint for declaratory and injunctive relief against the SBA, seeking the following: (i) a declaration that the ICR is arbitrary, capricious, and contrary to law, and that the SBA therefore erred by excluding contractor pay from the calculation of the Plaintiff's maximum loan amount and granting only partial forgiveness;[5] (ii) a declaration that retroactive application of the ICR violates the CARES Act and the Administrative Procedures Act ("APA") and therefore Plaintiff's PPP loan should be fully forgiven; (iii) an order vacating the OHA's decision and remanding with instructions to grant full forgiveness of Plaintiff's PPP loan on grounds the SBA failed to engage in a notice-and-comment procedure with regard to the ICR; and (iv) suspension of the OHA final decision and deferment of the Plaintiff's PPA loan until resolution of this matter.  [Doc. 1].

Plaintiff filed the instant Motion on September 22, 2023 [Doc. 23].  Defendants filed their Motion for Summary Judgment on November 6, 2023 [Doc. 25] and filed their supporting memorandum the following day, including their opposition to the Plaintiff's brief in the same document.  [Doc. 9].  On December 21, 2023, Plaintiff filed its opposition to the Defendants' Motion, combined with a reply in connection with its

---

[5]      In its Complaint, the Plaintiff originally sought the issuance of a permanent injunction barring Defendants from applying the ICR to any loan forgiveness request nationwide.  [Doc. 1, p. 20].  However, in its Motion for Summary Judgment, Plaintiff withdraws this request for relief.  [Doc. 23-1, p. 1 n.1].

own motion.  [Doc. 38].  On January 12, 2024, Defendants filed a Reply to Plaintiff's Response to Defendants' Cross Motion for Summary Judgment.  [Doc. 48].

All issues having been fully briefed by the parties, the Motions are now ripe for ruling.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment "is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency."  *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996).  To prevail, the moving party bears the initial burden of demonstrating "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Facts are considered "material" only if they "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.  *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).  Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute

when they reveal a basic agreement concerning what legal theories and material facts are dispositive.  *Newell-Davis v. Phillips*, 592 F.Supp.3d 532, 545 (E.D. La.), *aff'd*, 55 F.4th 477 (5th Cir. 2022), *opinion withdrawn and superseded on denial of reh'g*, 2023 WL 1880000 (5th Cir. Feb. 10, 2023), *cert. denied*, 144 S. Ct. 98, 217 L. Ed. 2d 25 (2023), *and aff'd*, No. 22-30166, 2023 WL 1880000 (5th Cir. Feb. 10, 2023), *and cert. denied*, 144 S. Ct. 98, 217 L. Ed. 2d 25 (2023)

**LAW AND DISCUSSION**

In its Motion, the Plaintiff asks this Court to vacate and set aside the ICR and instruct the SBA to grant full forgiveness of the Plaintiff's PPP loan.  Defendants seek a judgment affirming the SBA's decision as a matter of law.  For the reasons that follow, the Court enters summary judgment in favor of Defendants.

## I.    **The SBA's Decision was not Arbitrary and Capricious**

When an agency acts, it must "reasonably consider[ ] the relevant issues and reasonably explain[ ]" its actions.  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, 141 S. Ct. 1150, 1158, 209 L. Ed. 2d 287 (2021); Michigan v. EPA, 576 U.S. 743, 750, 752, 135 S. Ct. 2699, 192 L. Ed. 2d 674 (2015) ("[A]gency action is lawful only if it rests on a consideration of the relevant factors" and "important aspect[s] of the problem."  (quotation omitted).  Judicial review under this standard is deferential, and a court may not substitute its own policy judgment for that of the agency. *Prometheus Radio Project*, 592 U.S. at 423.  Courts must carefully ensure that "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."  *Id.* at 423. This Court "must set aside any action premised on reasoning that fails to account for

'relevant factors' or evinces 'a clear error of judgment.'" *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021), *quoting Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989).

The Plaintiff argues that the SBA's decision was arbitrary and capricious because the ICR violates the CARES Act and the SBA's Loan Application Form 2483, and because the SBA retroactively applied the ICR to the Plaintiff's PPP loan. The parties' dispute focuses on an interpretation of the term "payroll costs" under Section 15 U.S.C. § 636(a)(36)(A)(viii) of the CARES Act. This provision states:

(viii)   the term "payroll costs"—

(I) means

(aa) the sum of payments of any compensation with respect to employees that is a—

(AA) salary, wage, commission, or similar compensation;
(BB) payment of cash tip or equivalent;
(CC) payment for vacation, parental, family, medical, or sick leave;
(DD) allowance for dismissal or separation;
(EE) payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums;
(FF) payment of any retirement benefit; or
(GG) payment of State or local tax assessed on the compensation of employees; and

(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred ...

15 U.S.C. §636(a)(36)(A)(viii).

Plaintiff emphasizes Congress's use of the word "and" between subsections (aa) and (bb), arguing that "and" has a conjunctive meaning and that if Congress had intended two separate or alternative definitions of "payroll costs," it would have used "or," which implies a disjunctive meaning.  In electing to link (aa) and (bb) with "and," Plaintiff argues that both categories of payments – to employees and independent contractors – may be considered in calculating payroll costs.  Plaintiff also argues that the inclusion of the phrase "payments of any compensation to or income of a[n] independent contractor," 15 U.S.C § 636(a)(36)(A)(viii)(I)(bb), bolsters its interpretation that small business borrowers were permitted to include payments made to independent contractors when calculating payroll costs.  On the other hand, Defendants argue that (aa) addresses payments made to employees and (bb) *separately* addresses what PPP payments could be made to sole proprietors and independent contractors, and that use of the term "and" linking (aa) and (bb) does not indicate that a small business could aggregate payments made to both employees and independent contractors in calculating its payroll costs.

As this issue presents a question of statutory interpretation, the Court must first begin with the text of the statute itself.  *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019).  If the text is unambiguous, the analysis ends there. *Bedrock Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *United States v. Ary*, 892 F.3d 787, 789 (5th Cir. 2018).  The "cardinal canon" of statutory interpretation requires courts to "presume … a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 239, 253-254 (1992).  If "the agency's answer is based on a permissible construction

of the statute," that is the end of the matter. *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 307, 133 S. Ct. 1863, 1874–75, 185 L. Ed. 2d 941 (2013) (*citing Chevron*, 467 U.S. at 842, 104 S. Ct. 2778).

First, from a textual standpoint, Section 636(a)(36)(A)(viii)(I) does not specify in subclause (I) that "payroll costs" is "the sum of" items (aa) (payments to employees) and (bb) (payments to independent contractors). However, in other provisions of the PPP, where Congress intended for a figure to be calculated by adding up a list of itemized costs, it did so by specifying at the next higher stratum of the statute that the amount in question was to be calculated as "the sum of" the items listed at the level below. For example, Congress directed in Section 636(a)(36)(E)(i)(I) that a borrower's maximum PPP loan amount be calculated as "the sum of" items (aa) (payroll costs times 2.5) and (bb) (any EIDL loan balance) listed thereunder. Similarly, the maximum loan amount for a farmer or rancher without employees is calculated, per Section 636(a)(36)(V)(ii)(I), as "the sum of" items (aa) (2019 monthly gross income times 2.5) and (bb) (any EIDL loan balance) listed thereunder. *See also* 15 U.S.C. § 636m(b) (specifying in subsection (b) that the forgiveness amount shall be "the sum of" the expenses listed thereunder in paragraphs (1)-(8)). Here, Section 636(a)(36)(A)(viii)(I) states that "payroll costs" means employee compensation as set forth in item (aa), and, separately, compensation to or income of sole proprietors and independent contractors as set forth in item (bb). In other words, (aa) and (bb) were not meant to be added together to create a "sum." The text of the statute is clear that for small business employers, "payroll costs" means employee-compensation costs, while, for the self-employed – including independent contractors who were not

classified as employees and could obtain PPP loans of their own – "payroll costs" means the income or compensation they earned for themselves.[6]

This interpretation of Section 636(a)(36)(A)(viii)(I) is consistent with the CARES Act as a whole. This Court has a "duty to construe statutes, not isolated provisions." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010). Accordingly, provisions "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023). *See also JetPay Corp. v. United States Internal Revenue Serv.*, 26 F.4th 239, 242 (5th Cir. 2022) (internal marks omitted) (courts "interpret a statutory provision as part of a symmetrical and coherent regulatory scheme."). As the Defendants point out, Congress permitted contractors to apply for their own PPP loans. Thus, the Plaintiff's interpretation requires that this Court find, in essence, that Congress meant to allow PPP "double dipping," *i.e.*, permitting small businesses and their contractors to count the same amounts twice to obtain multiple loans. To accept the Plaintiff's interpretation, therefore, would require this Court to "attribute to Congress an intention to render a statute ... internally inconsistent." *Jones v. Hendrix*, 599 U.S. 465, 479 (2023); *see also Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) ("[W]e interpret provisions of a statute in a manner that renders them compatible, not contradictory."); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must ... interpret the statute as a

---

[6]     "Payroll costs" means both things, not the sum of both things.

symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a[ ] harmonious whole.") (citations and internal marks omitted).

Second, Defendants' interpretation of the CARES Act is also consistent with the documentation and certification requirements for loan forgiveness.  For example, for PPP loans over $150,000, borrowers must document the number (and pay rates) of their *employees* and certify that the amount for which forgiveness is sought was used to retain them (and to pay for other covered expenses).  15 U.S.C. § 636m.  There is no similar requirement for independent contractors, indicating Congress's intent that small businesses' payments to independent contractors are not included in "payroll costs."

Finally, the Court notes that in enacting the CARES Act, Congress located the PPP in Section 7(a) — within the SBA's pre-existing loan authority — thereby rendering the PPP program subject to the SBA's creation of rules protecting the program's integrity.  *See* 15 U.S.C. § 634(b)(6) (the SBA is authorized to "make such rules and regulations as" the agency "deems necessary" to implement the PPP); 15 U.S.C. § 634(b)(7) (the SBA may create rules and "take any and all actions" when it "determines such actions are necessary or desirable" in "dealing with" loans); 15 U.S.C. § 634(b)(11) (the SBA must "make such investigations as [the agency] deems necessary to determine whether a recipient" of "any assistance under this chapter ... has engaged ... in any acts" constituting a "violation of ... this chapter" or of "any order issued under this chapter.").  The SBA's action in promulgating the First IFR, which interprets the CARES Act and provides guidance to borrowers, was entirely within the scope of power Congress vested in the SBA.  Importantly, when Congress

amended the CARES Act by passing the Coronavirus Response and Consolidated Appropriations Act (2021) ("CAA"), Pub. L. 116-260, Div. N, Title II, § 273(a), 134 Stat. 1182, 1976-78 (2020), it made two amendments to the CARES Act's initial definition of "payroll costs," but made no amendment overturning the SBA's reasonable interpretation that a business's "payroll costs" do not include its payments to independent contractors.   This action affirms the SBA's understanding of Congress's intent in enacting the PPP. *See, e.g., Duarte v. Mayorkas*, 27 F. 4th 1044, 1059 (5th Cir. 2022) ("Congress can be presumed to be aware of relevant administrative interpretations when reenacting or amending a statute[.]").

Thus, for the foregoing reasons, the Court finds that the SBA's interpretation of 636(a)(36)(A)(viii)(I) was based on a permissible construction of the statute, and the SBA reasonably considered the relevant issues and explained its decision when it denied Plaintiff full forgiveness of its PPP loan.  Therefore, the Court concludes that the SBA's decision was not arbitrary and capricious.

## II.   <u>Application of the ICR to Plaintiff's PPP Loan was not Improper</u>

Plaintiff next urges that the SBA improperly and retroactively applied the ICR to Plaintiff's PPP loan.  In so arguing, the Plaintiff contends that the ICR, contained in the First IFR, was not effective until April 15, 2020, and therefore not applicable to the Plaintiff's April 7, 2020, loan application.  Defendants respond that their position does not rely on the First IFR.  Rather, as discussed herein, Defendants argue that the CARES Act itself does not permit inclusion of a business's independent contractor costs as "payroll costs" for purposes of the PPP.

As the Court has explained, the CARES Act gives the SBA power to enact rules governing how the PPP was to be administered.  CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).  *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020).  Acting on its statutory mandate, the SBA issued several IFRs, including the First IFR, relevant here.  This IFR clarifies that "payroll costs" does not include payments to independent contractors for purposes of the PPP.

Review of the record and the regulatory scheme establishes that the First IFR is properly considered an interpretive regulation meant to clarify the scope and breadth of the PPP.  Interpretative rules "advise the public of the agency's construction of the statutes and rules which it administers."  *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (2015), *quoting Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995).  The Fifth Circuit has recognized that an interpretative rule is one that "clarifies, rather than creates, law."  *Professionals and Patients for Customized Care v. Shalala*, 56 F.3d 592, 602 (5th Cir. 1995).  Thus, "[i]f an interpretative regulation merely clarifies what the language of [a] statute was intended to convey, it is ultimately misleading to term it retroactive."  *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 985 n.30 (5th Cir. 1977).  Such a regulation "constitutes only a step in the administrative process" and "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."  *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 135 (1936).

Here, the First IFR, which clarified that payments to independent contractors may not be included in payroll costs to determine the amount of a PPP loan, is

consistent with the text of the CARES Act itself.  Furthermore, as the ALJ explained, pursuant to 15 U.S.C. § 9012, Congress gave the SBA just 15 days to issue rules with respect to the PPP but expressly waived the notice requirements of Section 553(b) of Title 5.  Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on the SBA's and Treasury's websites on April 2, 2020.  As publication of the rule in the Federal Register was not required, the ALJ properly determined that the SBA *did* notify borrowers that wages paid to independent contractors could not be used as payroll costs prior to the Plaintiff's loan application submitted on April 7, 2022.  For these reasons, the Court concludes that the Plaintiff's argument the ICR was improperly retroactively applied to its PPP loan is without merit.

## III.  Equitable Estoppel and Injunctive Relief Claims

Finally, the Plaintiff argues that equitable estoppel and principles of fundamental fairness and due process require vacatur of the SBA Decision.  "Courts have been exceedingly reluctant to grant equitable estoppel against the government." *Gutierrez v. Lynch*, 830 F.3d 179, 182 (5th Cir. 2016), *citing Robertson-Dewar v. Holder*, 646 F.3d 226, 229–30 (5th Cir. 2011).  *See also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 110 S. Ct. 2465, 2469–72, 110 L. Ed. 2d 387 (1990) (noting that the Supreme Court has "reversed every finding of estoppel that [it has] reviewed").  Furthermore, the "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized."  *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005), *Richmond*, 496 U.S. at 426.  A claim for equitable estoppel against the government bears heightened requirements,

and "[a]ffirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Linkous v. United States*, 142 F.3d 271, 278 (5th Cir.1998) (internal quotations marks omitted).

Here, the SBA did not misrepresent or affirmatively conceal the procedures and calculations to be used to determine the maximum loan amount under the PPP. While it is certainly possible that the Plaintiff may have misunderstood the terms and conditions of obtaining a PPP loan, or perhaps obtained incorrect information from the Lender during the loan application process, this is insufficient to satisfy the heightened standards for equitable relief against the SBA under the facts and circumstances of this case.

<u>CONCLUSION</u>

Thus, for the reasons stated herein, this Court finding no genuine issues of material fact and having concluded that the SBA's decision was not arbitrary and capricious, the SBA did not improperly retroactively apply the ICR to the Plaintiff's PPP loan, and the SBA did not misrepresent or affirmatively conceal the procedures to be used to obtain a PPP loan, the Court concludes that Defendants are entitled to judgment as a matter of law.

Considering the foregoing,

IT IS HEREBY ORDERED that Plaintiff's MOTION FOR SUMMARY JUDGMENT [Doc. 23] is DENIED.

IT IS FURTHER ORDERED that Defendants' CROSS MOTION FOR SUMMARY JUDGMENT [Doc. 29] is GRANTED, and Plaintiff's claims against all Defendants are DENIED and DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 20th day of February 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE